IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GEORGE H DEAN,

    Petitioner,

v.                                                     CASE NO. 5:11-cv-386-RS-GRJ

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a response and an appendix with relevant portions of the state-court record. Doc. 18. Petitioner declined to file a reply. Upon due consideration of the Petition, the response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

### I. Summary of State-Court Proceedings

Petitioner's state court proceedings are summarized briefly below. Petitioner was charged by information with sexual battery on a helpless person, and lewd or lascivious molestation upon a disabled adult. Doc. 18-1 at 6. The charges arose from an incident on July 14, 2007, when Petitioner molested his cousin's wife, a legally blind woman, at her home.

A jury trial was held on August 28, 2008. At the close of the state's case,

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

Petitioner's counsel moved for a judgment of acquittal, which the trial court denied as to Count II but granted as to Count I, reducing the charge from sexual battery on a helpless person to the lesser included offense of sexual battery. Doc. 18-1 at 118-24; 129. Petitioner was convicted of both counts, and was sentenced the same day to fifteen years imprisonment on Count I and five years imprisonment on Count II, concurrent with Count I. Doc. 18-2 at 72; 67-68; 74-85.

Petitioner appealed his convictions and sentences. Doc. 18-2 at 87. His convictions and sentences were affirmed *per curiam* on June 23, 2009 by the Florida First District Court of Appeal (DCA). Doc. 18-2 at 129. The mandate issued on July 9, 2009. Doc. 18-2 at 130. Petitioner's conviction became final 90 days later when the time for filing a petition for a writ of certiorari in the Supreme Court expired. *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002) (Petitioner has ninety days to seek certiorari in Supreme Court after direct review in state courts).

Petitioner next sought relief by filing a motion pursuant to Fla. R. Crim. P. 3.800(a), on February 21, 2010, alleging he had been deprived of credit for time he spent in jail. Doc. 18-2 at 132-35. The state court denied his motion on March 17, 2010, because the Department of Corrections was responsible for applying credit for time spent in jail after sentencing but before being placed in the custody of the Department of Corrections. Doc. 18-2 at 138-39.

Petitioner filed a postconviction motion pursuant to Fla. R. Crim. P. 3.850 on June 10, 2010. Doc. 18-3 at 14-27. The state court entered an order on July 7, 2010, striking the motion because it was "facially insufficient," but giving Petitioner an

opportunity to amend.  Doc. 18-3 at 34.

Petitioner filed his amended Rule 3.850 motion on September 4, 2010.  Doc. 18-3 at 36-51.  The state court summarily denied relief on Petitioner's first, third and fourth grounds, and ordered the state to respond to Petitioner's second ground, which was a claim of ineffective assistance of counsel for failure to call an exculpatory witness, Dr. Vu, who examined the victim in the case.  Doc. 18-3 at 53-55.  After the state responded, the state court denied the remaining ground on December 8, 2010, without holding an evidentiary hearing.  Doc. 18-4 at 6-8.

On December 22, 2010, Petitioner field a motion for rehearing, which the state court denied on January 12, 2011.  Doc. 18-4 at 152-56; 151.  Petitioner appealed.  Doc. 18-4 at 159.  The First DCA *per curiam* affirmed the denial of Petitioner's 3.850 motion without opinion on August 30, 2011.  Doc. 18-5 at 17.  Petitioner filed a motion for rehearing on September 14, 2011, which was denied on October 17, 2011.  Doc. 8-5 at 21; 20.  The mandate issued November 2, 2011.  Doc. 18-5 at 18.

Petitioner also filed a state petition for writ of habeas corpus in the First DCA on July 7, 2011.  Doc. 18-5 at 26-33.  The petition was denied by the First DCA *per curiam* "on the merits" on July 29, 2011.  Doc. 18-5 at 35.  Petitioner filed a motion for rehearing on August 25, 2011, which was denied on September 27, 2011.  Doc. 18-5 at 38-39; 37.

The instant federal habeas petition, raising one ground for relief, which Respondent concedes is timely, was provided to prison officials for mailing on November 27, 2011.  Doc. 1.

## II.  Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*. at 1302, 1306.

## III.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the

merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); see § 2254(e) (1). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, ___ U.S. ___, 2013 WL 5904117, *4 (2013)(quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in

a definite way the case before them.") See also *Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue.)

"Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.' " *Jones v. GDCP Warden*, ___ F.3d ___, 2014 WL 1088312, at *10 (11th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  For § 2254(d)(1), clearly established federal law includes only the holdings, not the dicta of Supreme Court decisions. *White v. Woodall*, ___ U.S. ___, 134 S.Ct. 1697, 1702 (2014).  "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *Jones*, 2014 WL 1088312, at *10 (alteration in original) (quoting *Williams*, 529 U.S. at 413).  The Supreme Court has interpreted § 2254(d) as requiring that, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 786–87 (2011).  "[A]n 'unreasonable application' of [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Woodall*, 134 S.Ct. at 1702.  In other words, Petitioner must establish that no

fairminded jurist would have reached the Florida court's conclusion.  *See Richter*, 131 S.Ct. at 786–87; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58 (11th Cir.2012).  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S.Ct. at 786.

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id*. at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable."  *Gill*, 133 F.3d at 1290.

## IV.  Ineffective Assistance of Counsel

Because Petitioner's claim alleges ineffective assistance, a review of the applicable law is necessary.  Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The relevant question is not whether counsel's choices were strategic, but whether they

were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief

is a difficult one. *Harrington* 131 S.Ct. at 786. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that

counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## V.  Discussion

Petitioner alleges one ground for relief in his federal Petition. Petitioner alleges that he received ineffective assistance of counsel because his attorney failed to call Dr. Vu, who examined the victim, to testify about his examination report.  Testimony about the report was provided by Nurse Henrickson during trial, but the report itself was never entered into evidence.  Petitioner alleges that the failure to call Dr. Vu resulted in a violation of his confrontation clause rights because Dr. Vu, not Nurse Henrickson, prepared the report.  Doc. 1 at 4.

Respondent suggests that this ground is not the same as Petitioner's original claim presented in his amended 3.850 motion.  Rather, the claim Petitioner presented as ground two of his amended 3.850 motion was that counsel was ineffective for failing to call Dr. Vu as an exculpatory witness. Petitioner did not mention the argument that the failure to call Dr. Vu violated Petitioner's confrontation clause rights.  Petitioner declined to file a reply to the state's response.

In his amended 3.850 motion, although Petitioner did not use the term "confrontation clause" a single time, his argument was that Dr. Vu's testimony would have been exculpatory because Dr. Vu would have established that penetration did not occur in this case.  Doc. 18-3 at 42-44.  Petitioner raised the confrontation clause

argument for the first time in his reply to the state's response to his 3.850 motion. Doc. 18-3 at 144; Doc. 18-4 at 1-4. In addition to arguing that Dr. Vu was an exculpatory witness, Plaintiff argued in his reply:

> Also, by Nurse Henrickson reading from Dr. Vu's medical report and being asked specific questions pertaining to said report by defense counsel violated Defendant's Sixth Amendment by admitting Dr. Vu's medical report as evidence via Nurse Henrickon's testimony from it. The admission of Dr. Vu's medical report without the live testimony of the preparer (Dr. Vu) was in violation of the confrontation [clause] and Crawford and the right to confront the witness. Also, the Fla. Supreme Court also states that another individual even a supervisor of the individual who prepared a report can not testify regarding that individual's report.

Doc. 18-4 at 1-2. (Citations omitted.)

In deciding Petitioner's 3.850 motion, the state court did not specifically address the confrontation clause issue that Petitioner identified in his reply, denying his claim by finding that Petitioner was not prejudiced by counsel's failure to call Dr. Vu. Doc. 18-4 at 6-7. Thus, the state court addressed his claim as one for ineffective assistance of counsel. After his 3.850 motion was denied, Petitioner also raised his confrontation clause argument in his motion for rehearing in the trial court. Doc. 18-4 at 152-56. He again raised the argument in his appeal of the denial of his 3.850 motion. Doc. 18-4 at 167-70; Doc. 18-5 at 1-3.

As discussed above, before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round

of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999.) To satisfy the exhaustion requirement of federal habeas claims, a prisoner must first "fairly present" his claim to each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct the alleged violations of its prisoners federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). *Picard v. Connor*, 404 U.S. 270 (1971.)

The Court concludes that Petitioner has exhausted his ineffective assistance of counsel claim. The state also agrees with this conclusion. Doc. 18 at 24. Although he did not initially allege that the ineffective assistance of his counsel led to the violation of his confrontation clause rights, he presented this as additional support for his argument of ineffective assistance to the state court in his reply and motion for rehearing, and to the state appellate court in his brief on appeal. Although the trial court did not specifically address Petitioner's contention that his confrontation clause rights were violated by the ineffectiveness of his trial counsel in its opinion, the court clearly considered it, and determined that such a violation did not cause prejudice to Plaintiff, as required by *Strickland* for a finding of ineffective assistance. Indeed, after Petitioner again identified the confrontation clause issue in his motion for rehearing, the trial court denied his motion, stating that: "[t]he Defendant's motion fails to raise any new argument or allegation of merit that the Court previously overlooked, or which render erroneous the order denying his Motion for Post Conviction Relief." Doc. 18-4 at 151.

Furthermore, after raising the issue in his appellate brief, the Florida First DCA *per curiam* affirmed the denial of his motion. In *Gill v. Mecusker*, 633 F.3d 1272 (11th

Cir. 2011), the Eleventh Circuit acknowledged the well-settled principle that summary affirmances, such as the First DCA's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784).

Accordingly, as this claim has been exhausted, the Court must proceed to the merits of this claim. Petitioner argues that his trial counsel was ineffective for failing to call Dr. Vu to testify about his examination report of the victim, which Nurse Henrickson testified about during the trial. Doc. 1 at 4.

> In denying this ground, the state court wrote:
>
> In Ground Two, the Defendant alleges that trial counsel was ineffective for failing to call Dr. Vu, the doctor who examined the victim in this case. He claims that the doctor's report was illegible in particular areas, and that the assistant who testified was unable to confirm whether penetration occurred. Had the doctor been called, the Defendant alleges that the essential element of penetration would not have been established. Also, the Defendant argues that he would not have been assessed 80 victim injury points on his scoresheet. In order to state a facially sufficient claim of ineffective assistance for failing to call a witness, the defendant must allege the identity of the witness, a description of the testimony, and how the omission of the testimony prejudiced the outcome of the case, and that the witness was available. In this case, the Defendant has identified Dr. Vu, alleged that he was available, and stated that he would have testified and established beyond a reasonable doubt that penetration did not occur.
>
> The Defendant was not prejudiced by trial counsel's failure to call the doctor and it is improbable that the outcome of the case would have been

any different. Although the nurse had trouble reading the doctor's report and stated that she did not perform the vaginal exam, she testified that she did not remember vaginal trauma and that the report stated that no trauma was seen. She also testified that they had not even done the entire exam because the victim had not been sexually penetrated, and that it is very seldom that a rape has occurred without any vaginal trauma present. The state points out that the doctor would have similarly testified that no vaginal trauma existed, but the doctor could not have conclusively established that no penetration occurred because he was not present during the crime. Even though trial counsel pointed out in closing that there was absolutely no physical evidence of penetration, it appears that the jury believed the victim's testimony regarding the events, which was partially corroborated by the testimony of crime lab analyst, Suzanne Livingston, about the Defendant's DNA being present on the victim's left breast. Although no physical evidence of penetration was presented, the testimony of the victim was enough for the jury to conclude that a sexual battery had occurred.

Doc. 18-4 at 6-7. (Citations omitted.)

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). In this case, although Dr. Vu could have testified that there was no evidence of trauma during his examination, there would have been no way for him to conclusively testify that penetration had not occurred, as the state court noted in its opinion. Doc. 18-4 at 6-7.

However, even assuming, *arguendo*, that trial counsel was deficient for failing to call Dr. Vu to testify, Petitioner has not demonstrated prejudice resulting from counsel's failure to do so. Petitioner cannot show that even if counsel had called Dr. Vu to testify, that but for trial counsel's failure to call this witness to testify, he would have been acquitted. As the state court noted, Petitioner's counsel argued in closing that there was no physical evidence of penetration, and Petitioner himself denied penetrating the

victim during his own testimony at trial. Doc. 18-2 at 30; Doc. 18-1 at 143. And, notably, Nurse Henrickson also testified that although she could not totally read Dr. Vu's examination report, she was present during the exam and did not remember any trauma. Doc. 18-1 at 92-93. Thus, if Dr. Vu had been called as a witness his testimony also would have been consistent with Nurse Henrickson's and he would have confirmed, that there was no vaginal trauma observed. Accordingly, as the state court found, there was no prejudice in failing to call Dr. Wu as a witness.

On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court, and thus the Petition should be denied.

Lastly, out an abundance of caution, and construing Petitioner's claims liberally, the Court will address any freestanding claim for the violation of Petitioner's confrontation clause rights, to the extent Petitioner has attempted to bring one on federal habeas. Although it is highly doubtful that such a freestanding claim for the violation of his confrontation clause rights was exhausted – as Petitioner would have needed to raise the issue in his direct appeal, and not couched in terms of ineffective assistance in a 3.850 motion – the Court need not determine whether the claim was exhausted because any claim based upon a violation of the confrontation clause would have failed.

The Sixth Amendment provides that "i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." This clause

bars the admission of testimonial statements of a witness who did not appear at trial to be cross-examined. *Crawford v. Washington*, 541 U.S. 36 (2004). Notably, while Dr. Vu's examination report qualifies as testimonial hearsay, the report was never admitted into evidence and therefore the Confrontation Clause is not implicated. The situation might be different if the state had introduced into evidence the report without having Dr. Vu testify. But the state never sought to introduce the report. Rather, Defendant's counsel brought up the report during cross-examination of Nurse Hendrickson. Thus, the cases relied upon by Petitioner are inapposite to this case because the report was never admitted into evidence. *See, Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) (analysts' certificates of analysis qualify as testimonial and the admission of the certificates without the testimony of the analyst violates the Confrontation Clause), and *Bullcoming v. New Mexico*, 131 U.S. 2705 (2011) (forensic report – i.e. testimonial statement – may not enter into evidence through the in-court testimony of a second person).

     Although Nurse Henrickson was called by the state as a witness, she was never asked about the contents of the examination report by the state. When called to testify by the state, Nurse Henrickson's testimony was limited to the process of how a sexual assault examination is conducted, and the process for collecting evidence from an examination. She testified about the different processes for collecting a wet and dry swab, which were taken off of the victim's left breast in this case. This testimony was critical to the state's case so that it could build a foundation to introduce the finding of the presence of Petitioner's DNA on the victim's left breast through the testimony of a

Florida Department of Law Enforcement technician who examined the samples. The state did not ask Nurse Henrickson to testify about the contents of Dr. Vu's report of his physical examination of the victim for trauma. Doc. 18-1 at 88-92. Rather, Nurse Henrickson was asked about the examination report by defense counsel.

During cross-examination, defense counsel approached Nurse Henrickson and showed her a copy of the "SAE information sheet," which is the examination report at issue. Nurse Henrickson testified that it was her writing on the front page, and that it showed Dr. Vu was the examiner. She testified that Dr. Vu had made a mark that she could not interpret on the report because it was a faded copy, but that she did not remember the presence of any trauma. The report was never introduced into evidence. Doc. 18-1 at 92-94.

Thus, given that the report was never introduced into evidence, it is clear that there was never any testimonial evidence from a witness which Petitioner could not confront and, accordingly, the Confrontation Clause does not apply. Therefore, to the extent that Petitioner intended to raise a free standing Confrontation Clause claim, the claim has no merit and should be denied.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing

Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, Doc. 1, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS**, at Gainesville, Florida, this 14th day of January 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**
**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**